UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LISA MARLENE DURHAM,

              Plaintiff,

      v.                                      **DECISION AND ORDER**
                                                            19-CV-1204S
COMMISSIONER OF SOCIAL SECURITY

              Defendant.
_____


      1.      Plaintiff Lisa Marlene Durham brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for supplemental security income benefits under Title XVI of the Act.  (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff filed her application for benefits under Title XVI of the Act with the Social Security Administration on June 24, 2016. (R.[1] at 70.) Plaintiff had previously been found disabled, but lost her benefits when she was incarcerated in 2014. (R. at 80.) Plaintiff alleged disability beginning on her new application date of June 24, 2016, due to bulging discs in her neck and back, bipolar disorder, anxiety disorder, spinal stenosis, PTSD, ADHD, migraines, and GERD. (R. at 232.) Plaintiff's application was denied. Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). ALJ Brian LeCours held a hearing on August 8, 2018, at which Plaintiff, represented by her attorney, appeared and testified. (R. at 64-113.) Vocational Expert Jeanne Beachler also

---

[1] Citations to the underlying administrative record are designated as "R."

appeared and testified by telephone. At the time of the hearing, Plaintiff was 47 years old, with a high school-equivalent education and some college, and prior work experience as an auto parts deliverer. (R. at 78, 125.)

3. The ALJ considered the case de novo and, on October 18, 2018, issued a written decision denying Plaintiff's application for benefits. (R. at 19-32.) On July 19, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on September 9, 2019, challenging the Commissioner's final decision.[2]

4. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 12, 15.) Plaintiff filed a response on August 7, 2020, (Docket No. 16), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is denied, and Defendant's motion is granted.

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where

---

[2] The ALJ's October 18, 2018, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not,

3

>the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity from her alleged disability onset date of June 24, 2016. (R. at 21.)  At step two,

the ALJ found that Plaintiff has the severe impairments of degenerative disc disease of the cervical and lumbar spine, depressive disorder, and anxiety disorder. (R. at 22.) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R. at 23.)

11. Next, the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform light work, except that she is unable to climb ladders, ropes, or scaffolds, although she is able to frequently balance as well as occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. (R. at 25.) The ALJ further found that

> [Plaintiff] is able to engage in occasional overhead reaching bilaterally, and she must avoid concentrated exposure (no more than occasional) to pulmonary irritants such as fumes, odors, dust, and gases. [She] is able to engage in work consisting of unskilled tasks, work that requires little or no judgment to do simple duties that can be learned on the job in a short period of time. [She] is able to occasionally interact (brief and superficial nature) with the general public and co-workers, while she is able to frequently interact with supervisors.

(Id.)

12. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (R. at 30.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Id.) Accordingly, the ALJ found that Plaintiff was not disabled at any time since her application date of June 24, 2016. (R. at 31.)

13. Plaintiff argues that the ALJ's final determination is not supported by substantial evidence because the ALJ improperly substituted his judgment for the opinions of Drs. Yu-Ying Lin and Dr. Hillary Tzetzo, and failed to incorporate a number of

the doctors' assessed limitations into his RFC. Plaintiff also argues that the ALJ erred in rejecting examining physician Dr. Dominic Cirillo's opinion regarding Plaintiff's headaches without first attempting to clarify the opinion with Dr. Cirillo. For the following reasons, Plaintiff's arguments are unavailing.

14.     Residual functional capacity is defined as "what an individual can still do despite his or her limitations." Holste v. Colvin, No. 15-CV-582-FPG, 2016 WL 3945814, at *3 (W.D.N.Y. July 19, 2016) (citing Desmond v. Astrue, No. 11-CV-0818 (VEB), 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012)). To determine a claimant's RFC, "the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis." Desmond, 2012 WL 6648625, at *5 (citing 20 C.F.R. § 404.1545(a)).

15.     An ALJ is entitled to weigh all of the evidence available to make an RFC finding that is consistent with the record as a whole. Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013). See also Richardson v. Perales, 402 U.S. 389, 399, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). "Genuine conflicts in the medical evidence are for the Commissioner to resolve." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002); see also Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998).

16.     Here, the ALJ considered and gave "significant weight" to the opinions of Dr. Yu-Ying Lin and Dr. Hillary Tzetzo regarding Plaintiff's mental health limitations.  Dr. Lin performed a consultative psychological examination of Plaintiff on August 26, 2016. (R. at 356-60.) Dr. Lin noted that Plaintiff's demeanor was cooperative, but her manner

of relating was poor. (R. at 357.) Dr. Lin opined that Plaintiff's attention and concentration were moderately impaired, her memory was mildly limited, and her intellectual functioning was average. She opined that Plaintiff could follow, understand, and perform simple tasks and instructions without limitations, that Plaintiff had a moderate limitation in maintaining attention and concentration. Dr. Lin further opined that Plaintiff could maintain a regular schedule and learn new tasks without limitations, had a moderate limitation performing complex tasks independently and needed supervision for such tasks, was moderately-to-markedly limited in making appropriate decisions, was mildly limited in relating to others, and was moderately limited in dealing appropriately with stress. (R. at 359.) Dr. Lin opined that Plaintiff's difficulties were caused by stress-related problems and distractibility. (Id.) Dr. Lin further opined that Plaintiff's psychiatric problems did not appear significant enough to interfere with her ability to function on a daily basis. (Id.)

   17. Dr. Tzetzo, a State agency consultant, upon a review of Plaintiff's entire record, opined that Plaintiff could perform simple work tasks "involving mainly brief and superficial contact with supervisors, coworkers, and the public." (R. at 130.) Dr. Tzetzo further opined that Plaintiff would have no limitations with simple instructions, moderate limitations with detailed instructions, moderate limitations remembering locations and work-like procedures, maintaining attention and concentration for extended periods, working with others without being distracted, making simple work-related decisions, responding appropriately to supervisors, getting along with coworkers, responding appropriately to changes in the work setting, and setting realistic goals. (R. at 135.) Dr. Tzetzo opined that Plaintiff would have marked limitations interacting with the public and maintaining socially appropriate behavior, but had no limitations asking simple questions

or requesting assistance. (R. at 134-45.) Dr. Tzetzo opined that Plaintiff would not have any marked limitations in work-related mental activities that would preclude her from performing substantial gainful activity. (R. at 130.)

18.     The ALJ crafted an RFC that incorporated some elements of both opinions and rejected other elements. For example, the ALJ rejected Dr. Lin's opinion that Plaintiff needed supervision and had moderate-to-marked limitations in making decisions, finding that it was contradicted by Dr. Lin's assertion that Plaintiff's problems did not appear significant enough to interfere with her ability to function on a daily basis, by Plaintiff's activities of daily living, which included showering, dressing, cooking, cleaning, managing her money, taking public transportation, and attending church and Narcotics Anonymous meetings twice per week, and by Dr. Tzetzo's opinion. (R. at 29). Instead the ALJ found that Plaintiff could perform simple work with little judgment, could occasionally interact with coworkers and the public, and could interact frequently with supervisors. (R. at 29.) Given that it is the ALJ's job to formulate an RFC based on the evidence as a whole and to reject elements that are inconsistent, there was no error here.

19.     Similarly, the ALJ rejected Dr. Tzetzo's opinion that Plaintiff had marked limitations interacting with the public, maintaining socially appropriate behavior, and adhering to basic standards of neatness and cleanliness, because it was inconsistent with Dr. Tzetzo's own opinion that Plaintiff could handle simple work tasks and interact mainly briefly with others. (R. at 29.) As above, the ALJ's determination reflects a permissible selection from Dr. Tzetzo's opinion of elements that were consistent with other parts of the record.

20. Plaintiff argues that the ALJ erred in stating that she could have "frequent" interactions with supervisors, when the record demonstrated a greater degree of limitation. (Docket No. 12-1 at p. 13.) Defendant notes that Dr. Tzetzo's assessment that Plaintiff "could handle simple work tasks—involving mainly brief and superficial contact with supervisors, coworkers and the public" is not as limiting as Plaintiff claims. (R. at 130.) This Court observes that the functional implications of the phrase "mainly brief and superficial contact" are not entirely clear. But even if there were a conflict between this—more limiting—opinion and the other evidence in the record, the ALJ was permitted to resolve it. It is clear that the ALJ crafted his RFC determination by considering Dr. Tzetzo's opinion that Plaintiff could handle simple work involving "mainly brief" contact with supervisors, Dr. Lin's opinion that Plaintiff was only mildly limited in interacting with others, and Plaintiff's activities of socializing with family and friends, attending church and Narcotics Anonymous twice a week. The ALJ considered the evidence as a whole and resolved conflicts in the evidence in arriving at an RFC determination.

21. Plaintiff also argues that the ALJ should have contacted Dr. Dominic Cirillo to clarify his opinion regarding Plaintiff's headaches. Defendant argues that the ALJ was correct in not incorporating Dr. Cirillo's opinion about Plaintiff's headaches because it was based solely on Plaintiff's own report and because the record shows no evidence that Plaintiff received treatment for headaches.

22. Dr. Dominic Cirillo performed an internal medicine examination of Plaintiff on August 26, 2016. (R. at 361-67.) He took Plaintiff's medical history, and noted that she reported that she had migraines lasting up to three days, but that these were much less frequent since she had started taking Topamax, and severely incapacitating

9

migraines occurred about once a year. (R. at 362.) Dr. Cirillo also performed a physical examination of Plaintiff. He opined that she had a moderate limitation for bending, a mild to moderate limitation in squatting and kneeling, a mild to moderate imitation for lifting and reaching, and mild limitation for turning her head and neck. (R. at 367.) Dr. Cirillo also opined that Plaintiff "may have intermittent interruptions in schedule due to migraines." (Id.) Given that Dr. Cirillo did not note that Plaintiff had a headache on the date of the examination, his opinion regarding Plaintiff's migraines was likely based on Plaintiff's self-report.

23. The ALJ gave significant weight to Dr. Cirillo's opinion, but found Dr. Cirillo's opinion regarding Plaintiff's migraines to be vague and unsupported by the evidence in the record. (R. at 29.) This Court finds no error in the ALJ's assessment of Dr. Cirillo's migraine limitation. The medical record lacks evidence of treatment for migraines, and Plaintiff herself told Dr. Cirillo that her headaches were improving with Topamax, and that debilitating headaches occurred about once a year. (R. at 362.) Again, the ALJ was entitled to reject elements of opinions that are not consistent with the rest of the record, and he properly did so here.

24. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. The decision contains an adequate discussion of the medical evidence supporting the ALJ's determination that Plaintiff was not disabled, and Plaintiff's aforementioned contentions are unavailing. Plaintiff's Motion for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 15) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:   November 10, 2020
         Buffalo, New York

                                              s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                              United States District Judge